IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

CHRISTOPHER MICHAEL BARRON,

                Plaintiff,             OPINION AND ORDER

v.

                                      22-cv-492-wmc

THOMAS HERRITZ,
NATALIE RAUSCH, BRADY
STERKOWITZ, LANCE RANDELL,
EVELYN HYBICKI,
and CHIP MEISTER,

                Defendants.

*Pro se* plaintiff Christopher Michael Barron alleges that defendants failed to provide him adequate medical care while he was held at the Sauk County Jail between August 2 through 5, 2022. (Dkt. #6.) Defendants move for summary judgment on the ground that Barron failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act ("PLRA"). (Dkt. #22.) The court agrees and will grant defendants' motion.

OPINION

Under the PLRA, "[a]n inmate complaining about prison conditions must exhaust administrative remedies before filing suit." *Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005). "Exhaustion requires complying with the rules applicable to the grievance process at the inmate's institution." *Id.*; *see also Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require."). The PLRA's exhaustion requirement is mandatory. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). Failure to exhaust

requires dismissal of a prisoner's case without prejudice. *Miles v. Anton*, 42 F.4th 777, 780 (7th Cir. 2022). Relevant here, if an inmate is transferred to "a contracted facility, the inmate shall file the complaint with the institution where the issue arose." Wis. Admin. Code DOC § 310.07(9).

Inmates are only required to exhaust administrative remedies that are available to them. *Ross v. Blake*, 578 U.S. 632, 642 (2016). "[A]n administrative procedure is unavailable when . . . it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 643. Also, an administrative procedure is unavailable when it is "so opaque" that "no ordinary prisoner can discern or navigate it." *Id.* at 643-44. Finally, an administrative procedure is unavailable if prison and jail officials "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

In this case, the Jail's handbook was last revised in 2018 and details its grievance procedure. (Dkt. #24-1 at 3-5.) As an initial matter, an inmate must "make every effort to resolve [his] complaint informally . . . with the housing unit deputy" before pursuing a formal grievance. (*Id.* at 3.) If unsuccessful, the inmate must request a grievance form within 48 hours of the incident, then fill out and submit the form within 48 hours of its receipt. A grievance may be rejected for specified reasons, and untimely grievances are accepted "on a case-by-case basis." (*Id.* at 4.) If an inmate is not satisfied with the initial decision made on his grievance, he may appeal up through three, additional levels of review.

By August of 2022, when plaintiff was in the jail, inmates used tablets to submit their grievances rather than paper forms. The tablet logs information about its inmate user, including the name of the inmate, the inmate number, and the time the inmate logged in and out. The tablet also takes a photo of the inmate to ensure that he matches the user information used to log in.

It is undisputed that plaintiff received a copy of the handbook when he was booked at the jail on August 2, 2022, and did not file any grievances while at the jail or any grievance about the relevant events even after his return to Oshkosh Correctional Institution. Nevertheless, plaintiff argues that he had no opportunity to request and submit a grievance before being transported back to Oshkosh. Specifically, after passing out in his jail cell at around 11 p.m. on August 2, plaintiff represents that he was placed on quarantine and only returned to his cell on August 3. Moreover, because an inmate on quarantine status is allowed out of his cell for one hour each day, plaintiff further represents that he already had his daily "hour out" on August 4 when he asked an officer for a grievance form. Indeed, the officer explained that because grievances were now submitted via tablets, he would have to "wait for [his] next hour out to use the tablet." (Dkt. #28 at 2.) Although plaintiff further attests that he asked to have his next "hour out" early the next morning of August 5th, he was instead transported back to prison at 6:30 a.m. that morning, before he could access a tablet and after the 48-hour window to request to file a grievance had closed. However, when plaintiff wrote a letter six days later from Oshkosh Correctional Institution to the jail, asking for the names of certain officers and a nurse to

prepare to file a lawsuit, he still did not explain the basis for the suit or ask to file a grievance.

Accordingly, plaintiff has not shown that he tried to follow the jail's grievance procedures but had *no* opportunity to request and file a timely grievance before filing this federal lawsuit. To begin, the procedures were available to him throughout his time at the jail, and he does not allege that he made any attempt to informally resolve his grievance with the housing unit deputy or anyone else as required before submitting a formal grievance. Plaintiff also does not explain why he did not timely request to submit a grievance on August 3 either through a nurse or an officer.

As for his request to file a grievance on August 4, defendants submitted tablet access information showing that plaintiff *did* use a tablet on that date at 1:19 p.m. and argue that he could have filed a timely grievance. (Dkt. #31-1.) However, even conceding that, while plaintiff does not elaborate about the sequence of events on August 4, he *does* attest to asking to submit a grievance on August 4, but being told about the tablets only *after* his once-a-day opportunity to use one. Moreover, as plaintiff notes, the jail's handbook was last revised in 2018 and does not clarify that grievance forms were now completed on tablets only, a revision the jail may wish to make, particularly given that access to a tablet appears to be limited.

Even accepting that he could not file a formal grievance by the time he was told to use a tablet on August 4, plaintiff still does not explain his failure to initiate any form of informal resolution of his pain and suffering complaints while at the jail, or even if he did, explain why he waited until later in the afternoon of the 4th to inquire about filing a

4

grievance. Thus, the court must grant defendants' motion for summary judgment and dismiss this case without prejudice. Plaintiff can refile his claims if he can successfully exhaust them, but he will likely find it impossible to do so now because the relevant events happened nearly a year ago.

ORDER

IT IS ORDERED that:

1) Defendants' motion for summary judgment for failure to exhaust administrative remedies (dkt. #22) is GRANTED and plaintiff's claims are DISMISSED without prejudice.

2) The clerk of court is directed to enter judgment for defendants and to close this case.

Entered this 22nd day of September, 2023.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge